# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **KATHRYN SACK,**<br><br>Plaintiff,<br><br>v.<br><br>**CENTRAL INTELLIGENCE AGENCY,**<br><br>Defendant. | Case No. 1:12-cv-00537 (CRC) |

## MEMORANDUM OPINION

Katheryn Sack, a University of Virginia PhD student and erstwhile documentary filmmaker, challenges the Central Intelligence Agency's response to a series of Freedom of Information Act ("FOIA") requests that she made for records relating to the Agency's polygraph program. She specifically challenges the CIA's withholding of 26 documents under FOIA Exemptions 1, 3, and 5. She also argues that the Agency improperly withheld information it ahd previously released and non-exempt information that it could have segregated from exempt information. Because the CIA has responded by releasing additional records and further explaining its withholdings, summary judgment in favor of the Agency is now appropriate as to most of Sack's objections. The Court will, however, require the CIA to provide further detail regarding information it has withheld pursuant to the Central Intelligence Act.

### I. Background

Plaintiff Kathryn Sack brought this FOIA action to compel the release of records withheld by the CIA in response to a series of requests for records regarding the CIA's polygraph program. Sack seeks the records in order to demonstrate sources of inaccuracy and bias in the design and implementation of the program. Compl. ¶ 13–37. Sack lodged her first request in 2009, seeking, among other things, all documents pertaining to her own polygraph sessions in 2004, when she

apparently was denied a position with the Agency after failing three polygraph tests; incentives for polygraph testers to "increas[e] their confession rates;" incentives for second-line polygraph tape reviewers to uphold the determination of the original tester; guidelines or protocols for her "polygraphers' conduct;" policies on disclosing reasons for denial; statistics on polygraphs conducted by the CIA; and assessments of polygraph accuracy rates. Declaration of Martha M. Lutz, Chief, CIA Litigation Support Unit, ("Lutz Decl.") ¶ 1 & Ex. A. Later that year, Sack sought records related to several other topics, including the CIA's position on the applicability of Title VII to the security clearance process and the functions of the CIA Equal Opportunity Office. Id. Ex. C.

In 2011, Sack submitted three new requests to the CIA. The first sought "[a]ll records maintained by [its] security office regarding bias in polygraphs" and "regarding research into the effectiveness or limitations of polygraphs." The second requested "[a]ll records maintained by [its] security office representing aggregate data on polygraph examinations." And the third asked for records relating to the relationship between the CIA's security clearance policies and its EEO office as well as records relating to restrictions on the use of polygraphs. Id. Ex. G, K, N. She sent a final request through counsel in June 2012, seeking all records regarding the "Blue Ribbon Panel," an expert committee that studied the CIA polygraph program. Id. Ex. Q.

The CIA responded to Sack's first two 2011 requests in June 2012. Id. Ex. J, M. With respect to her first request, the it released four records in part and withheld one; with respect to her second request, the it released three in part and referred one to another agency. Id. The CIA responded to Sack's third 2011 request in September 2012, releasing one document in part and referring one to another agency. Id. Ex. P. It responded to her 2009 requests in March 2013, stating that it had located 31 responsive documents, then released eight documents in full, ten in part, and withheld the remainder. Id. Ex. G. Finally, the CIA responded to Sack's 2012 request in March 2013, producing 11 records in part and withholding 32 in full. Id. Ex. R.

Sack initially filed this action against four additional agencies—the Department of Defense, the Department of Justice, the Office of Personnel Management, and the Office of the Director of National Intelligence—to which she had made similar FOIA requests for polygraph records. After Judge Wilkins, who was previously assigned to this case, granted the Defendants' motion to sever Sack's claims against the various other agencies, the CIA moved for summary judgment, contending that it had performed an adequate search and produced all responsive records except those properly withheld or redacted under FOIA Exemptions 1, 3, 5, and 6. Def.'s Mem. in Supp. of Mot. for Summ. J. In support of its motion, the CIA has provided Vaughn indices, the Lutz declaration mentioned above, and the declaration of John F. Hackett, Chief of the Information and Data Management Group for the Office of the Director of National Intelligence. Hackett Decl. ¶ 1. These supporting materials describe the record systems searched in response to Sack's numerous requests, the methods used to search them, the records that were produced and withheld, and the justifications for the Agency's withholdings.

Sack does not take issue with the adequacy of the CIA's search. She has limited her challenge to the CIA's withholding of 26 documents under Exemptions 1, 3, and 5.[1] She also argues that the CIA previously released some of the withheld information and failed to segregate non-exempt material. Opp. to Mot. for Summ. J. at 2–4.

## II. Standard of Review

Summary Judgment is appropriate when the pleadings, affidavits, exhibits, and other evidence before the Court demonstrate that there is no genuine issue of material fact in dispute, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has

---

[1] Specifically, she contests the following documents—which are numbered based on the ECF-marked page of the CIA's Vaughn index, Lutz Decl. Ex. SS, on which they appear—Exemption 1: VI-2, VI-17, VI-18, VI-19, VI-20, VI-21, VI-33, & VI-62; Exemption 5: VI-54, VI-80, VI-84, VI-85, VI-86, VI-87, VI-88, VI-89, VI-90, & VI-91; Exemption 3: VI-3, VI-26, VI-31, VI-32, VI-35, VI-36, VI-94, VI-98, and all documents challenged under Exemptions 1 and 5.

the burden to demonstrate that there are no issues of material fact in dispute that may affect the outcome of the case under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must accept all evidence of the non-movant and draw all reasonable inferences in the non-movant's favor. Id. at 255.

FOIA cases such as this are typically decided on motions for summary judgment. E.g., Shapiro v. Dep't of Justice, 969 F. Supp. 2d 18, 26 (D.D.C. 2013), appeal dismissed, 13-5345, 2014 WL 1378748 (D.C. Cir. Feb. 26, 2014) (citing Brayton v. Office of the U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011)). In order to meet its FOIA obligations and prevail on a motion for summary judgment the government must demonstrate that it conducted an adequate search and produced all responsive records not properly withheld under FOIA's nine statutory exemptions. Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980). The government may satisfy this burden through affidavits setting forth in reasonable specificity its search methods and the justifications for its withholdings. Consumer Fed'n of Am. v. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006). The government cannot satisfy its burden with affidavits that are vague or conclusory, or merely parrot the statutory standard. Id. An agency affidavit will be afforded "substantial weight[] so long as it . . . is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith[.]" Judicial Watch, Inc. v. Dep't of Defense, 715 F.3d 937, 940–41 (D.C. Cir. 2013) (quotation omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" Wolf v. CIA, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982). Plausible, non-conclusory government affidavits "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)). When the government raises national security objections to disclosure, this Circuit

"consistently defer[s] to executive affidavits predicting harm to the national security, and ha[s] found it unwise to undertake searching judicial review[.]" Ctr. For Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 927 (D.C. Cir. 2003) (citations omitted).

### III. Analysis

Sack does not take issue with the adequacy of CIA's search, its withholdings under Exemption 6, or its withholding of 48 documents in whole or in part under Exemptions 1, 3, 5, and 6. Opp. to Mot. for Summ. J. at 2–4. She does, however, challenge: (1) the withholding of eight documents under Exemption 1 as classified and related to intelligence sources and methods; (2) the withholding of 26 documents under Exemption 3 pursuant to the National Security Act and the Central Intelligence Act; (3) the withholding of ten documents under Exemption 5 as reflecting predecisional agency deliberations; (4) the withholding of information Sack contends the CIA previously released to the public; and (5) inconsistencies in the CIA's declarations that no non-exempt material could be segregated from documents withheld in full. The Court will address each challenge in turn.

#### A. Exemption 1

Documents that are properly classified in the interests of national defense or foreign policy may be withheld under FOIA Exemption 1. 5 U.S.C. § 552(b)(1). Sack contends that the CIA improperly withheld eight documents that it avers are classified under Executive Order 13,526, 75 FR 707, because they reflect "intelligence sources and methods." Sack argues that the Agency does not explain why its polygraph program is an "intelligence method" and does not make clear whether it followed necessary procedures in classifying the records under EO 13,526. Opp. to Mot. for Summ. J. at 6–10.

The Supreme Court has defined "intelligence sources and methods" broadly to encompass "all sources of intelligence that provide, or are engaged to provide, information the Agency needs to

5

perform its statutory duties with respect to foreign intelligence[,]" CIA v. Sims, 471 U.S. 159, 169–70 (1985), including the "broad power to protect the secrecy and integrity of the intelligence process." Id. at 170.[2] In her declaration, Ms. Lutz states that records withheld under Exemption 1 contain "assessments of the [CIA's] polygraph program, statistics . . . , details of the tests, information detailing protected security equipment, techniques[,] and tactics[.]" She posits that "[i]f aspects of the Agency's polygraph program were to be disclosed, unscrupulous individuals could attempt to circumvent or counter security screening procedures" for applicants to positions in the CIA. Lutz Decl. ¶ 44. Lutz further explains that the polygraph program "serves as an intelligence tool designed to reduce the agency's vulnerability to counterintelligence risks and to safeguard the integrity of national security installations and the workforce." Supplemental Lutz decl. ¶ 5.

Lutz's declarations, which are entitled to deference, present a "logical" and "plausible" argument that polygraphs of CIA job applicants constitute an intelligence method. See Wolf, 473 F.3d at 374–75. Polygraphing job applicants can credibly be said to protect against individuals illegally using or revealing classified information obtained after misrepresenting their reasons for applying to the Agency, which falls within the CIA's "broad power to protect the secrecy and integrity of the intelligence process." See Sims, 471 U.S. at 170. This Court reached the same conclusion in Blazy v. Tenet, 979 F. Supp. 10 (D.D.C. 1997), where it permitted the CIA to withhold records regarding its polygraph program as an intelligence method under Exemption 1. Id. at 15, 23; cf. Morley v. CIA, 508 F.3d 1108, 1128–29 (D.C. Cir. 2007) (CIA background

---

[2] Although the Supreme Court developed this definition in the context of interpreting the National Security Act, id., it is equally applicable here, as the meaning of "intelligence sources and methods" under the National Security Act is equivalent to the definition under Executive Order 13,526 when evaluating whether documents were properly withheld under FOIA. See, e.g., Am. Civil Liberties Union v. Dep't of Defense, 628 F.3d 612, 618–20 (D.C. Cir. 2011) (reviewing both National Security Act and prior version of E.O. 13,526).

investigatory procedures for applicants constitute law enforcement "techniques and procedures" under Exemption 7(E)). Moreover, The CIA uses polygraphs when interviewing witnesses directly in the intelligence gathering process. See Inst. for Policy Studies v. CIA, 885 F. Supp. 2d 120, 145 (D.D.C. 2012) (interview relating to a Colombian cartel investigation). Requiring the Agency to reveal its polygraph techniques thus would compromise its ability to use polygraphs in this capacity as well. Consistent with these prior cases, the Court concludes that the CIA has properly withheld classified documents concerning its polygraph program as an intelligence method.

Sack also contends that the Agency has not established that it properly followed the additional procedural requirements of Executive Order 13,526 § 1.7(d) for documents classified only after they are the subject of a FOIA request. Sack correctly points out that Lutz's initial declaration fails to indicate whether the documents in question were classified before Sack made her request and argues that the classification procedures outlined in the declaration do not satisfy the additional requirements of § 1.7(d). Opp. to Mot. for Summ. J. at 6–7. Lutz's second declaration, however, explains that "[a]ll of the responsive records for which Exemption (b)(1) was asserted were classified prior to the receipt of plaintiff's FOIA request." Supplemental Lutz Decl. ¶ 3. Given the "substantial weight" this Court affords agency affidavits absent evidence to the contrary, Judicial Watch, 715 F.3d at 940–41, the CIA has established that it need not comply with the additional procedures required by § 1.7(d).

### B. Exemption 3

FOIA Exemption 3 permits agencies to withhold documents pursuant to nondisclosure provisions contained in other federal statutes. 5 U.S.C. § 552(b)(3). The CIA's withholdings under Exemption 3 rely on Section 102(A)(i)(1) of the National Security Act and Section 6 of the Central Intelligence Act, 50 U.S.C. § 3507. The National Security Act requires the Director of National Intelligence to "protect intelligence sources and method from unauthorized disclosure[,]" 50 U.S.C

§ 3024(i)(1) (formerly 50 U.S.C. § 403–1(i)(1)), and compliance with the Act is a proper justification for withholding records under Exemption 3, Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990). Section 6 of the Central Intelligence Act protects from disclosure "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA.]" 50 U.S.C. § 3507 (formerly 50 U.S.C. § 403g). It too qualifies as an Exemption 3 statute. Weissman v. CIA, 565 F.2d 692, 694 (D.C. Cir. 1977).

To withhold records under the National Security Act, the CIA must establish that the materials discuss intelligence sources and methods. 50 U.S.C § 3024. As discussed above, polygraphs constitute an intelligence method. Thus, because the CIA's declarations and Vaughn indices explain that documents withheld under Exemption 3 pursuant to the National Security Act relate to the polygraph methods employed by the Agency, Lutz Decl. Ex. SS; Supplemental Lutz Decl. ¶ 5, they are properly withheld. See, e.g., Am. Civil Liberties Union, 628 F.3d at 618–20.

Whether the CIA has properly withheld records under the Central Intelligence Act presents a more challenging question. The Central Intelligence Act authorizes the withholding of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. Sack reads the final phrase "of personnel employed by the Agency," correctly in the Court's view, to modify all items in the list and thus only documents relating to the "organization" and "functions" of particular agency personnel are exempt. Opp. to Mot. for Summ. J. at 12—14; see Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101, 176 (D.D.C. 2013). The CIA, however, has withheld certain records on the ground that they relate to the operations and functions of the Agency generally, a significantly broader category of documents. Reply in Supp. of Mot. for Summ. J. at 7. The CIA claims "no harm, no foul" because "most" of its Exemption 3 withholdings were based on *both* the Central Intelligence Act and the National Security Act, and that only "internal office, routing, and distribution information" were withheld based on the Central

8

Intelligence Act exclusively. Id. at 6. While that may be so, the Agency's Vaughn indices do not specifically indicate what information the Agency has withheld exclusively under the Central Intelligence Act. The Court therefore will require the CIA to provide a supplemental declaration and Vaughn index describing in further detail the information in each of the contested documents that has been withheld exclusively on the basis of the Central Intelligence Act. The Court will rule on the Plaintiff's Exemption 3 challenge upon receipt of the supplemental memorandum and any response thereto.

      C. Exemption 5

FOIA Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Predecisional documents that are part of an agency's deliberative process ordinarily fall under Exemption 5. E.g., Public Citizen, Inc. v. OMB, 598 F.3d 865, 874 (D.C. Cir. 2009). A document is "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotation marks omitted). A draft of a document that reflects "editorial judgments" about the content of the final version are generally predecisional and covered by Exemption 5. See Dudman Commc'ns Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1569 (D.C. Cir. 1987).

Sack argues that the CIA's justification for its withholdings under this exemption are insufficient because the withheld documents discuss progress or actions taken on recommendations of the Blue Ribbon Panel on polygraphs, and thus were created after the panel issued its report. Opp. to Mot. for Summ. J. at 19–20. Regardless of whether the final implementation document would be exempt from disclosure under the deliberative process privilege, Lutz's supplemental declaration explains that the withheld documents are drafts, not the final version, and were part of

9

the Agency's "ongoing process of evaluating recommendations made by the Blue Ribbon Panel and assessing programmatic changes." Supplemental Lutz Decl. ¶ 8. Drafts such as these reflecting internal evaluations of expert recommendations fall within the deliberative process privilege covered by Exemption 5. See, e.g., People for the Am. Way Found. v. Nat'l Park Serv., 503 F. Supp. 2d 284, 303 (D.D.C. 2007) (drafts fall under the deliberative process exemption when the government's description indicates predecisional and deliberative characteristics). The CIA has therefore justified its withholding of records under Exemption 5.

D. Prior Release

Sack contends that the CIA improperly withheld two documents concerning the Blue Ribbon Panel's recommendations because the Agency previously released the information contained in the documents in response to one of her prior FOIA requests. See Muslim Advocates v. Dep't of Justice, 833 F. Supp. 2d 92, 99 (D.D.C. 2011) ("'Under the public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record.'") (brackets omitted) (quoting Cottone v. Reno, 193 F.3d 550, 554 (D.C. Cir. 1999)). After re-reviewing the two documents, the CIA determined that they did in fact contain the same information as the prior release, and provided the withheld records to Sack. Supplemental Lutz Decl. ¶ 9. Thus, these documents are no longer at issue.

E. Reasonably Segregable Material

FOIA requires the release of reasonably segregable portions of records containing exempted material. 5 U.S.C. § 552(b). The government need not segregate if non-exempt information is "inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). The government is entitled to a presumption that it complied with

the requirement to segregate non-exempt materials. Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013) (citing Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1117 (D.C. Cir. 2007)).

Sack argues that the CIA failed to satisfy its burden to demonstrate that it released all reasonably segregable materials because, for every document listed in its Vaughn index, the Agency states no more than that it "conducted a line-by-line review and disclosed all reasonably segregable non-exempt information" and that no "reasonably segregable non-exempt portions of the document could be released." Opp. to Mot. for Summ. J. at 22–23. The Agency repeats this mantra even for documents that it released in part.

While the internal inconsistentcy of the CIA's statement that it could not segregate non-exempt material in documents where it did just that may reflect carelessness in the preparation of its Vaughn index, the statement alone is not sufficient, under the circumstances of this case, to overcome the presumption of good faith accorded to the Agency. The CIA correctly points out that the exhibits in Sack's opposition show the Agency to have made line-by-line redactions that appear largely to minimize the information withheld. See Opp. to Mot. for Summ. J. Ex. A. Moreover, the CIA's declaration in each entry of its Vaughn index that it conducted a line-by-line review for segregable information is sufficient to establish that it fulfilled its obligation to segregate. See Juarez v. Dep't of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008) (statement that agency "had conducted a page-by-page review of all investigative records contained in the requested documents" justified its withholdings). The Court further notes that each of the challenged documents that was withheld in full was either properly classified,[3] which would extend the exemption to the entirety of the document, or was a validly withheld pre-decisional draft of a chart[4] that the Agency released in part as discussed above. Supplemental Lutz. Decl. ¶ 8.

---

[3] VI-2, VI-17, VI-18, VI-19, VI-20, VI-21, VI-33.
[4] VI-80, VI-84, VI-85, VI-86, VI-87, VI-88, VI-89, VI-90, VI-91.

The only case Sack cites to support her argument that the CIA's <u>Vaughn</u> index is unduly conclusory, <u>Wilderness Society v. Department of the Interior</u>, 344 F. Supp. 2d 1 (D.D.C. 2004), misses the mark. There, the court ordered the defendant to supplement its <u>Vaughn</u> index because, rather than stating whether there was segregable information as to each document it was withholding, the defendant merely provided a blanket statement in a declaration that all non-exempt information was intertwined. <u>Id.</u> Because the CIA here has explained that it reviewed each withheld document on a line-by-line basis, and because the Agency's descriptions of the documents withheld and justifications for the withholdings are sufficiently detailed, it has satisfied its burden to establish that it has released all reasonably segregable, non-exempt material.

**IV.     Conclusion**

For the above reasons, the Court will grant in part and temporarily deny in part the CIA's motion for summary judgment. The CIA shall, on or before June 27, supplement its declarations and <u>Vaughn</u> indices to clarify what information it seeks to withhold exclusively under the Central Intelligence Act. The Court will issue an Order consistent with this Memorandum Opinion.


Date:         June 17, 2014

CHRISTOPHER R. COOPER
United States District Judge